IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

**MARILUZ ACOSTA PADILLA,**     Case No. 1:17 CV 2256

    Plaintiff,     Judge Solomon Oliver, Jr.

    v.     Magistrate Judge James R. Knepp, II

**COMMISSIONER OF SOCIAL SECURITY,**

    Defendant.     REPORT AND RECOMMENDATION

## INTRODUCTION

Plaintiff Mariluz Acosta Padilla ("Plaintiff") filed a Complaint against the Commissioner of Social Security ("Commissioner") seeking judicial review of the Commissioner's decision to deny disability insurance benefits ("DIB") and supplemental security income ("SSI"). (Doc. 1). The district court has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). This matter has been referred to the undersigned for preparation of a report and recommendation pursuant to Local Rule 72.2. (Non-document entry dated October 25, 2017). Following review, and for the reasons stated below, the undersigned recommends the decision of the Commissioner be reversed and remanded for further proceedings.

## PROCEDURAL BACKGROUND

Plaintiff filed for DIB and SSI on March 13, 2012, alleging a disability onset date of July 1, 2011. (Tr. 177-78). She has a date last insured of September 30, 2011. (Tr. 58, 198). Her claims were denied initially and upon reconsideration. (Tr. 118, 128). Plaintiff then requested a hearing before an administrative law judge ("ALJ"). (Tr. 140). Plaintiff (represented by counsel), and a vocational expert ("VE") testified at a hearing before the ALJ on September 11, 2013. (Tr. 560-

90).[1] On November 8, 2013, the ALJ found Plaintiff not disabled in a written decision. (Tr. 638-48). The Appeals Council denied Plaintiff's request for review, making the hearing decision the final decision of the Commissioner. (Tr. 654).

Plaintiff filed a complaint in the United States District Court, Northern District of Ohio in April 2015. *Acosta-Padilla v. Comm'r of Soc. Sec.*, Case No. 1:15-cv-0847, Doc. 1 (N.D. Ohio). On May 5, 2016, the case was remanded to the ALJ for reconsideration of Plaintiff's speed and pace based restrictions in the RFC. *Acosta-Padilla v. Comm'r of Soc. Sec.*, 2016 WL 3148610 (N.D. Ohio), *report and recommendation adopted*, 2016 WL 3126253.

Plaintiff filed a subsequent application for SSI and DIB on May 6, 2015. (Tr. 539, 700). On August 19, 2015, Plaintiff was found disabled as of her subsequent application date and awarded benefits. *See* Tr. 539, 700. The Appeals Council reviewed the favorable determination and found it was supported by substantial evidence. (Tr. 700).

Thus, on remand, the relevant time period at issue before the ALJ was July 1, 2011 to May 5, 2015. (Tr. 539, 594, 700). Plaintiff (represented by counsel), and a vocational expert ("VE") testified at a hearing before the ALJ on July 11, 2017. (Tr. 591-634). On August 21, 2017, the ALJ found Plaintiff not disabled in a written decision. (Tr. 539-51).

Plaintiff timely filed the instant action on October 25, 2017. (Doc. 1).

**FACTUAL BACKGROUND**

Personal Background and Testimony

Plaintiff was born in May 1961, making her 50 years old on the alleged onset date. (Tr. 58). She alleges disability due to thyroid problems, diabetes, neuropathy, asthma, high blood pressure, and emotional problems. *Id.*

---

1. This hearing transcript is duplicated at Tr. 27-57.

2

Plaintiff had past work as a cook (Tr. 568), and a cafeteria attendant (Tr. 565, 567). She most recently worked part-time at Walmart as a fitting room attendant from 2010 to 2011. (Tr. 566, 603). She left that job due to leg pain and swelling from walking across the store and standing for long periods. (Tr. 608). After work, Plaintiff had to elevate her legs and take water pills to reduce the swelling. (Tr. 612). Doctors told Plaintiff her leg pain was neuropathy due to diabetes. (Tr. 608).

At the September 2013 hearing, Plaintiff testified she struggled with daily chores due to leg pain. (Tr. 570). On a good day, she could clean her house "a little bit", and sometimes cook. *Id*. Plaintiff lived alone and relied on her neighbors or daughter-in-law for meals. *Id*. She lived in a second floor apartment, and had difficulty walking up the stairs. *Id*. She could only walk short distances before losing her breath. *Id*. Plaintiff did not drive, and relied on her son for transportation. (Tr. 571). She had to shop for groceries with her son, or another person, so they could help carry items. (Tr. 614). While in the store, Plaintiff leaned on the cart for support. *Id*.

In a disability report dated February 2013, Plaintiff noted she could not sit or stand for long periods of time. (Tr. 266). She could not completely dress herself or brush her hair because she was unable to lift her right arm. *Id*.

Relevant Medical Evidence[2]

In June and July 2011, Plaintiff attended two individual counseling sessions at the Nord Center. (Tr. 356-59). Plaintiff reported stress and depression due to her daughter's terminal illness diagnosis. *Id*. She considered a leave of absence from Walmart, and requested help with Family Medical Leave Act ("FMLA") paperwork. (Tr. 358). At an August 2011 visit, Plaintiff reported

---

2. The undersigned summarizes the evidence from the relevant time period: Plaintiff's alleged onset date (July 1, 2011) (Tr. 177), through the date on which the ALJ found her disabled (July 16, 2014) (Tr. 550).

3

she did not like to "go out" on her own. (Tr. 351). She expressed concern she could not continue working at Walmart due to anxiety. *Id*. On examination, Plaintiff had an average demeanor, logical thought process, and full affect. (Tr. 354-55). Dominic Gomes, M.D., diagnosed panic disorder with agoraphobia and depressive disorder, not otherwise specified. (Tr. 353).

In January 2012, Plaintiff saw Evan Rae, D.O. (Tr. 283). Plaintiff reported fatigue, dyspnea, wheezing, weight gain, and edema. (Tr. 285). On examination, Plaintiff had 2+ pitting edema in both legs. (Tr. 286). Dr. Rae diagnosed diabetes, hypertension, hypothyroidism, and asthma. (Tr. 286-87). During two visits with Dr. Rae in March 2012, Plaintiff reported fatigue and diabetes complications. (Tr. 289, 294). On examination at one visit, Plaintiff had edema. (Tr. 290). Dr. Rae continued diagnoses of diabetes, hypertension, hypothyroidism, and asthma. (Tr. 289, 293).

In May 2012, Plaintiff sought to reestablish care at the Nord Center after she missed appointments due to transportation issues. (Tr. 337). Plaintiff reported a depressed mood, isolation, lack of motivation, and irritability. (Tr. 342, 344). On examination, Plaintiff had a guarded demeanor, logical thought process, and constricted affect. (Tr. 346). Providers diagnosed adjustment disorder with mixed anxiety and depressed mood. (Tr. 345).

In July 2012, Plaintiff saw Norberto Juan, M.D., for follow-up regarding diabetes and hypertension. (Tr. 393). On examination, Plaintiff had no edema. (Tr. 396). Dr. Juan recommended follow-up in three months for continued diabetes monitoring. *Id*.

Later in July 2012, Plaintiff attended a consultative examination with Christina Feser, D.O. (Tr. 361-66). Plaintiff reported chronic pain, numbness, tingling and swelling in both legs, numbness, tingling and cracked dry skin on both feet, frequent urination, shortness of breath, and chronic fatigue. (Tr. 361). On examination, Plaintiff had no clubbing or cyanosis in her extremities,

4

however, she had 1+ edema in both legs. (Tr. 364). Plaintiff had decreased sensation in both feet and could not discriminate between dull and sharp tactical stimuli. *Id*. She could squat and rise with moderate difficulty, had normal tandem walking, and could walk on her heels and toes with ease. *Id*. She could rise from a seated position without assistance, but had difficulty getting up and down from the exam table. *Id*. Dr. Feser found Plaintiff "provided us with her best effort during the examination." *Id*.

In November 2012, Plaintiff attended a diagnostic assessment update at the Nord Center. (Tr. 404). Plaintiff reported consistent depression and loneliness, and expressed desire to improve her "bad moods". *Id*. On examination, Plaintiff had a logical thought process and full affect, but demonstrated poor insight and judgment. (Tr. 409-10). Providers diagnosed adjustment disorder with mixed anxiety and depressed mood. (Tr. 408).

Later in November 2012, Plaintiff saw Brian Lott, M.D. (Tr. 397). Plaintiff reported tingling and numbness in her right arm, vision changes, and dyspnea. (Tr. 398-99). On examination, Plaintiff had no edema. (Tr. 400). Dr. Lott continued diagnoses of diabetes, hypertension, and hypothyroidism. (Tr. 397).

In January 2013, Plaintiff saw Maryum Zohair, M.D., for uncontrolled diabetes and microalbuminuria. (Tr. 982). Plaintiff reported a poor diet and a lack of exercise due to joint pain. *Id*. Dr. Zohair requested a follow-up visit to continue monitoring Plaintiff's diabetes. *Id*.

Plaintiff saw Elizabeth Daquila, M.D., in June 2013 for diabetes, hypothyroidism, and asthma. (Tr. 449). Plaintiff reported numbness and tingling in her legs. *Id*. On examination, she had no edema. (Tr. 452). Dr. Daquila continued diagnoses of asthma, hypertension, hypothyroidism, obesity, and diabetes. (Tr. 452-53). Plaintiff saw Dr. Daquila again in August 2013 for the same conditions. (Tr. 967). Plaintiff reported generalized pain, fatigue, and shortness

5

of breath which required the use of an inhaler. (Tr. 968-69). This record also contains a notation regarding "ongoing bilat[eral] leg pain." (Tr. 969).

Plaintiff saw Virginia Brugger, CNP, in October 2013 for diabetes causing dizziness at night, as well as a facial rash. (Tr. 956). Plaintiff reported generalized pain, numbness in her extremities, a facial rash, and weight gain. (Tr. 956-57). Examination revealed no edema; Plaintiff had no response to monofilament testing in her feet and toes. (Tr. 960). At a January 2014 visit, Ms. Brugger continued to treat Plaintiff's diabetes. (Tr. 948-54). On examination, Plaintiff had edema. (Tr. 952).

In June 2014, Ms. Brugger continued to treat Plaintiff's diabetes and referred her for bariatric treatment. (Tr. 936). On examination, Plaintiff had bilateral tenderness in the lower paravertebral lumbar musculature; she had no edema. (Tr. 939). Ms. Brugger referred Plaintiff to a spine specialist. (Tr. 936, 940). In July 2014, Plaintiff returned to Ms. Brugger for diabetes, hypothyroidism, edema, asthma, fatigue, and depression. (Tr. 927-28). On examination, Plaintiff had edema. (Tr. 932); *see also* Tr. 928 (assessing "[l]eg edema"). A preliminary screening revealed moderate depression. (Tr. 933). Ms. Brugger recommended nutrition counseling. (Tr. 934).

In January 2015, Plaintiff saw Ms. Brugger for asthma and left leg pain. (Tr. 899-900). She rated her knee pain as a "10", and noted it felt like her leg was "going to break". *Id*. On examination, Plaintiff had a positive Thessaly test. (Tr. 899). Ms. Brugger ordered an MRI and prescribed a cane. *Id*.

Opinion Evidence

*Examining Physician*

In July 2012, Dr. Feser opined Plaintiff could "sit normally in an 8 hour workday with normal breaks". (Tr. 366). Dr. Feser found Plaintiff had mild to moderate limitations with standing,

6

lifting, carrying weight, and walking "due to body habitus and peripheral neuropathy" and "d[id] not need an assistive device with regards to short and long distances and uneven terrain." *Id*. Dr. Feser noted "[t]here are limitations on bending, stooping, crouching, squatting, and so on and the claimant will be able to perform these occasionally due to body habitus and peripheral neuropathy." *Id*.

*Reviewing Physicians*

In July 2012, state agency physician Anne Prosperi, D.O., reviewed the medical evidence of record and opined Plaintiff could occasionally lift and/or carry twenty pounds; frequently lift and/or carry ten pounds; and sit, stand and/or walk "about 6 hours in an 8-hour workday". (Tr. 65). Dr. Prosperi based these findings on Plaintiff's leg pain, peripheral neuropathy, and morbid obesity. *Id*. Dr. Prosperi opined Plaintiff could frequently climb ramps/ stairs, balance, kneel, stoop, crouch, and crawl. (Tr. 66). Plaintiff could never climb ladders/ropes/scaffolds. *Id*. Dr. Prosperi based these findings on Plaintiff's peripheral neuropathy and morbid obesity. *Id*. Finally, Dr. Prosperi opined Plaintiff needed to avoid unprotected heights and hazardous machinery for the same reason. (Tr. 67). In December 2012, state agency physician Bradley Lewis, M.D., reviewed the medical evidence of record and concurred with the opinions of Dr. Prosperi, except he added an additional limitation to occasional crouching. (Tr. 95).

VE Testimony

A VE appeared and testified at the hearing before the ALJ. *See* Tr. 621-28. The ALJ asked the VE to consider a person with Plaintiff's age, education, and vocational background who was physically and mentally limited in the way in which the ALJ determined Plaintiff to be prior to July 16, 2014. (Tr. 621-22). The VE opined such an individual could not perform Plaintiff's past

work, but could perform other jobs such as a cleaner, housekeeping, cafeteria attendant, or laundry folder. (Tr. 622).

ALJ Decision

In a written decision dated August 2017, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (Tr. 542). She found Plaintiff had severe impairments of: back pain due to degenerative disc disease of the lumbar spine, asthma, diabetes mellitus, obesity, loss of visual acuity, peripheral neuropathy, anxiety disorders, and affective disorders. *Id*. The ALJ then outlined Plaintiff's RFC:

> After careful consideration of the entire record, the undersigned finds that prior to July 16, 2014, the date the claimant became disabled, the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can frequently climb ramps/stairs, never climb ladders, ropes and scaffolds; frequently balance, stoop, kneel, and crawl, occasionally crouch; avoid concentrated exposure to extremes of cold, heat and humidity, avoid concentrated exposure to fumes, odors, dusts, gasses, and poor ventilation, avoid all exposure to hazards such as industrial machinery and unprotected heights; and the claimant has the ability to perform simple tasks which do not involve strict time or production demands, the ability to perform tasks which do not require contact with the general public and the occasional and superficial interaction with co-workers and the ability to work where changes are well-explained.

(Tr. 544). The ALJ then found Plaintiff unable to perform past relevant work; was an individual closely approaching advanced age at the time of the decision; and had a high school education. (Tr. 549). The ALJ concluded that, prior to July 16, 2014, considering Plaintiff's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed. *Id*. Thus, the ALJ concluded Plaintiff was not disabled prior to July 16, 2014, but became disabled on that date and has continued to be disabled through the date of this decision. (Tr. 550).

**STANDARD OF REVIEW**

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992). The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

**STANDARD FOR DISABILITY**

Eligibility for benefits is predicated on the existence of a disability. 42 U.S.C. §§ 423(a), 1382(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) & 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process—found at 20 C.F.R. §§ 404.1520 and 416.920—to determine if a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

    2.      Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

    3.      Does the severe impairment meet one of the listed impairments?

    4.      What is claimant's residual functional capacity and can claimant perform past relevant work?

    5.      Can claimant do any other work considering her residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters,* 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy. *Id.* The ALJ considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work. *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is she determined to be disabled. 20 C.F.R. §§ 404.1520(b)-(f) & 416.920(b)-(f); *see also Walters*, 127 F.3d at 529.

**DISCUSSION**

Plaintiff argues the ALJ erred in two ways: (1) in disregarding her subjective symptoms; and (2) in failing to consider Plaintiff's bilateral leg edema when formulating the RFC. (Doc. 13, at 15, 18). The Commissioner responds that the ALJ's decision is supported by substantial evidence. (Doc. 16, at 6). The undersigned addresses Plaintiff's arguments in this order. For the reasons discussed below, the undersigned recommends the Commissioner's decision be reversed and remanded for further proceedings.

Subjective Symptom Analysis

When a claimant alleges impairment-related symptoms, the Commissioner follows a two-step process to evaluate those symptoms. 20 C.F.R. §§ 416.929(c) and 404.1529(a); SSR 16-3p, 2017 WL 5180304, *2-8.[3]

First, the ALJ must determine whether there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the claimant's symptoms, *e.g*., pain. SSR 16-3p, 2017 WL 5180304, *3-4. Second, the ALJ must evaluate the intensity and persistence of the claimant's symptoms to determine the extent to which those symptoms limit the claimant's ability to perform work-related activities. *Id.* at *3, 5-8. To evaluate a claimant's subjective symptoms, an ALJ considers the claimant's complaints along with the objective medical evidence, information from medical and non-medical sources, treatment received, and other evidence. *Id.* at *5-8. In addition to this evidence, the ALJ must consider the factors set forth in 20 C.F.R. §§ 416.929(c)(3) and 404.1529(c)(3). *Id.* at *7-8. Those factors include daily activities; location, duration, frequency, and intensity of pain or other symptoms; factors that precipitate and aggravate the symptoms; type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; treatment, other than medication for

---

3. SSR 16-3p replaces SSR 96-7p and applies to ALJ decisions on or after March 28, 2016. *See* 2017 WL 5180304, at *1, 13. The ALJ's decision here is dated August 21, 2017 and thus SSR 16-3p applies. SSR 16-3p clarifies the language of the pre-existing standard in SSR 96-7p, 1996 WL 374186 (1996) to the extent that it "eliminated the use of the term 'credibility' in the sub-regulatory policy and stressed that when evaluating a claimant's symptoms the adjudicator will not 'assess an individual's overall character or truthfulness' but instead 'focus on whether the evidence establishes a medically determinable impairment that could reasonably be expected to produce the individual's symptoms and given the adjudicator's evaluation of the individual symptoms, whether the intensity and persistence of the symptoms limit the individual's ability to perform work-related activities....'" *Huigens v. Soc. Sec. Admin.*, 718 F. App'x 841, 848 (11th Cir. 2017) (quoting *Hargress v. Soc. Sec. Admin.*, 874 F.3d 1284, 1289-90 (11th Cir. 2017) (quoting in part SSR 16-3p)). Both rulings refer to the two-step process in 20 C.F.R. §§ 404.1529(c) and 416.929(c).

relief of pain or other symptoms; measures other than treatment a claimant uses to relieve pain or other symptoms, *e.g.*, lying flat on one's back; and any other factors pertaining to a claimant's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. §§ 416.929(c) and 404.1529(c). Although the ALJ must "consider" the listed factors, there is no requirement that she discuss every factor. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 287 (6th Cir. 2009).

The Sixth Circuit has explained, interpreting SSR 96-7p, the precursor ruling, that "an administrative law judge's credibility findings are virtually unchallengeable". *Ritchie v. Comm'r of Soc. Sec.*, 540 F. App'x 508, 511 (6th Cir. 2013) (internal citation omitted). Nevertheless, the ALJ's decision "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, 2017 WL 5180304, at *10.

Here, the ALJ correctly identified the two-step process (Tr. 544-45), summarized Plaintiff's medical records *id*., and offered her credibility assessment:

> Therefore, after careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not fully supported prior to July 16, 2014.

(Tr. 546).

Plaintiff argues this statement does not satisfy the requirements of SSR 16-3p because it demonstrates the ALJ improperly disregarded Plaintiff's subjective symptoms. (Doc. 13, at 17). The Commissioner recognizes the ALJ could have been more thorough, noting, "[i]t is true the ALJ devoted most of her subjective-complaints analysis to the objective findings of record and she could have discussed the other factors [s]he considered in greater detail." (Doc. 16, at 8). However,

12

the Commissioner argues remand is not required because the assessment of subjective complaints is a factual matter which entitles the fact-finder (ALJ) to great deference. *Id.* (citing *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007)). Further, the Commissioner points out the ALJ considered other factors, such as Plaintiff's daily activities. *Id.* In a Reply, Plaintiff re-emphasizes that the ALJ does not explain (anywhere in her opinion) how Plaintiff's statements about her daily activities detracts from her credibility. (Doc. 18, at 1).

Here, the ALJ's credibility statement demonstrates she did precisely what the applicable regulation says she may not: "make a single, conclusory statement that 'the individual's statements about his or her symptoms have been considered' or that 'the statements about the individual's symptoms are (or are not) supported or consistent.'" SSR 16-3p, 2017 WL 5180304, at *9. In other words, the boilerplate language used here by the ALJ is not enough. The ALJ's decision must "contain specific reasons for the weight given to the individual's symptoms . . . and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.*

A review of the ALJ's credibility assessment here does not reflect consideration of any of the seven factors an ALJ *must* consider in addition to the objective medical evidence when assessing credibility: 1) daily activities; 2) location, duration, frequency, and intensity of pain or symptoms; 3) precipitating and aggravating factors; 4) the type, dosage, effectiveness, and side effects of any medication; 5) treatment, other than medication, to relieve pain; 6) any measures used to relieve pain; and 7) other factors concerning functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3). To emphasize – an ALJ *must* consider these factors *in addition to* the objective medical evidence in assessing Plaintiff's credibility. SSR 16-3p, 2017 WL 5180304, *7-8. For example, Plaintiff offered extensive

testimony regarding her challenges with everyday chores and activities (Tr. 570-71) and challenges in the workplace (Tr. 608, 612). As noted above, the ALJ must "consider" the listed factors, but there is no requirement that she discuss every factor. *White*, 572 F.3d at 287. In the ALJ's opinion here, the factors were not discussed, and it is unclear whether she considered them at all. Thus, remand is required for the Commissioner to comply with applicable procedural requirements in assessing Plaintiff's credibility.

Step Two Analysis

Next, Plaintiff argues the ALJ erred when she failed to account for Plaintiff's bilateral leg edema. (Doc. 13, at 18). The Commissioner responds that the ALJ's decision is supported by substantial evidence. (Doc. 16, at 6). For the reasons discussed below, the undersigned recommends the decision be reversed and remanded in this regard as well.

At Step Two of the disability analysis, the ALJ determines whether a claimant has a medically determinable impairment (or a combination of impairments), that is "severe". 20 C.F.R. §§ 404.1520(c), 416.920(c). By definition, a "severe" impairment is one that "significantly limits your physical or mental ability to do basic work activities". *Id*. "After an ALJ makes a finding of severity as to even one impairment, the ALJ 'must consider limitations and restrictions imposed by *all* of an individual's impairments, even those that are not 'severe.'" *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 576-77 (6th Cir. 2009) (quoting SSR 96-8p, 1996 WL 374184, at *5) (emphasis added). In other words, if a claimant has at least one severe impairment, the ALJ must continue the disability evaluation and consider *all* of the limitations caused by the claimant's impairments – severe or not. When an ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, the failure to find additional severe impairments

14

does not constitute reversible error. *Id.* at 577 (citing *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)).

>Here, at Step Two, the ALJ determined:
>
>Since the alleged onset date of disability, July 1, 2011, the claimant has had the following severe impairments: back pain due to degenerative disc disease of the lumbar spine, asthma, diabetes mellitus, obesity, loss of visual acuity, peripheral neuropathy, anxiety disorders and affective disorders. Beginning January 2015, the claimant has also had the severe impairment of left knee pain due to torn medial meniscus (20 CFR 404.1520(c), [4]16.920(c)).
>
>***
>
>The evidence indicates that the claimant also suffers from hypertension and sleep apnea, but these impairments are non-severe because they would have no more than a minimal effect on the claimant's ability to perform basic work activities (Exhibits 1F, p. 18; 2F; 15F, pp. 2, 10, 73).

(Tr. 542).

Plaintiff argues the ALJ's failure to consider her bilateral leg edema, and any limitations resulting therefrom, was harmful because the evidence of record, including Plaintiff's statements, indicates the edema more than minimally affected her ability to stand and walk. (Doc. 13, at 20). The undersigned agrees.

Objective and subjective evidence in the record indicates edema may have more than minimally limited Plaintiff's ability to perform basic work activities. For example, Plaintiff had edema in several examinations (Tr. 285-86, 290, 928, 930, 364, 952, 1002, 1007). She also consistently reported pain or numbness in her legs. (Tr. 361, 951, 958, 969, 1009). Dr. Feser – whose opinion the ALJ afforded "great weight" (Tr. 546) – recognized Plaintiff's edema and found she had "mild to moderate limitations with standing and walking due to body habitus and peripheral neuropathy" (Tr. 365-66). Finally, at the July 2017 hearing, Plaintiff testified she left her job at Walmart due to leg pain and swelling from walking and standing for long periods. (Tr.

608). After work, Plaintiff had to elevate her legs and take water pills to reduce the swelling. (Tr. 612). And, as previously discussed, the ALJ failed to properly analyze Plaintiff's testimony regarding subjective symptoms such as these.

Again, the mere fact that the ALJ did not consider Plaintiff's edema a "severe" impairment at Step Two is not reversible error. *Nejat*, 359 F. App'x at 577. However, she was still required to consider the limitations and restrictions imposed by this impairment. *Id.* The ALJ's opinion here is completely devoid of any mention of Plaintiff's edema or any indication she considered how the swelling in Plaintiff's legs affected (or did not affect) Plaintiff's ability to work. *See* Tr. 539-50. The undersigned cannot "gap fill" by engaging in *post hoc* rationale here because, ultimately, it is the opinion of the administrative agency that is under consideration. *May v Astrue*, 2011 WL 3490186, at *9 (N.D. Ohio), *report and recommendation adopted*, 2011 WL 3490229. Remand is thus required for the Commissioner to consider any limitations caused by Plaintiff's bilateral edema on her RFC.

## CONCLUSION AND RECOMMENDATION

Following review of the arguments presented, the record, and the applicable law, the undersigned finds the Commissioner's decision denying SSI and DIB is not supported by substantial evidence and recommends the decision be reversed and remanded pursuant to Sentence Four of 42 U.S.C. § 405(g).

        s/James R. Knepp II
United States Magistrate Judge

*ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this notice. Failure to file objections within the specified time

WAIVES the right to appeal the Magistrate Judge's recommendation. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).